JUDGE McMAHON

PREET BHARARA
United States Attorney for
the Southern District of New York
By:  JASON P. HERNANDEZ (JH 18598)
Assistant United States Attorney
One St. Andrew's Plaza
New York, New York 10007
Tel. (212) 637-1024

10 CV 2125

RECEIVED
MAR 10 2010
U.S.D.C. S.D.N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :
UNITED STATES OF AMERICA            :
                                    :
        - v. -                      :        VERIFIED COMPLAINT
                                    :
ANY AND ALL FUNDS IN MERRILL        :        10 Civ.
LYNCH BANK (SUISSE) S.A., ACCOUNT   :
NUMBER 437972, HELD IN THE NAME(S)  :
OF FINANCIERA VOLTURNO S.A.,        :
CLAUDIO FERREIRA DOS SANTOS AND/OR  :
WALTER PONCE DE LEON, AND ALL       :
PROPERTY TRACEABLE THERETO,         :
                                    :
        Defendant-in-rem.           :
                                    :
------------------------------------X

        Plaintiff United States of America, by its attorney, Preet

Bharara, United States Attorney for the Southern District of New

York, for its complaint alleges as follows:

                I. JURISDICTION AND VENUE

        1.    This action is brought by the United States of America

pursuant to Title 18, United States Code, Section 1956(a)(1),

seeking the forfeiture of any and all funds on deposit in Merrill

Lynch S.A., account number 437972 held in the name(s) of Financiera

Volturno S.A., Claudio Ferreira Dos Santos and / or Walter Ponce De

Leon (the "Defendant Funds").

        2.    This Court has jurisdiction pursuant to Title 28, United

States Code, Sections 1345 and 1355.  Venue is proper under Title 28, United States Code, Sections 1355(b)(1)(A) and (B) and 1395(b) because the actions giving rise to forfeiture took place in the Southern District of New York.

3.    The Defendant Funds are presently in the custody of the Swiss authorities in Merrill Lynch account number 437972 located in Switzerland.

## II. THE DEFENDANT FUNDS ARE THE PROCEEDS OF A SCHEME TO SELL COUNTERFEIT COMPUTER SOFTWARE

4.    The Defendant Funds are the proceeds of a scheme to sell counterfeit computer software from several e-commerce websites owned and operated by Shaileshkumar Jain, a/k/a "Sam Jain."  The proceeds from those sales were directed and subsequently re-directed into several bank accounts controlled by Jain or his nominees in an attempt to conceal or disguise the nature, location, source, ownership, or control of the proceeds.

5.    Jain has owned and operated several internet-based companies including Discount Bob, Shifting Currents Financials, Inc., Innovative Marketing, Inc., Pro Motion Management Consulting Incorporated ("PMMCI"), and Shopenter.com, LLC. Through these and other business entities, Jain owned and operated several Internet websites, including but not limited to discountbob.com, shopenter.com, gito.com, MP3U.com, buysmarter.com, and winantivirus.com, all of which advertised the sale of purportedly genuine software developed and manufactured

2

by Symantec Corporation ("Symantec"). Symantec is a California corporation that develops and sells internet security software meant to protect individual computers from external threats such as computer viruses.

6.     Individuals interested in purchasing genuine Symantec software were contacted via unsolicited e-mail advertising, known as "spamming," or lured to websites owned and operated by Jain through "pop-up" Internet advertisings offering the sale of genuine Symantec products. Once directed to the Internet websites owned and operated by Jain, consumers were induced to purchase products purporting to be genuine Symantec computer security software.  These products appeared to be genuine, copyrighted Symantec software and the products appeared to bear the registered trademark of Symantec. Consumers paid for the products by completing an online order form, which required consumers to provide their credit card payment information, name, and an address to which the product was to be delivered.

7.     After orders for Symantec software were placed by consumers using Internet websites owned and operated by Jain, credit card payments made by the consumers were electronically processed by third-party credit card processing services, and funds were deposited into bank accounts held in the name of business entities owned and operated by Jain. Jain then instructed another individual ("Individual-1") to mail the

counterfeit copies of the Symantec software to the customers.

8.    Symantec has identified nine customers who purchased counterfeited Symantec software from websites owned and operated by Jain. Eight of the nine customers responded to a "spam" e-mail promoting what appeared to be genuine Symantec software products, and the ninth purchased the product directly from the website "discountbob.com." After purchasing their desired product with a credit card, each of the customers received an envelop labeled "Software Purchase Department" with a return address of P.O. Box 820, Amelia, Ohio 45102-0820, containing the products they had ordered. These products were subsequently inspected by a software expert assisting in the investigation who confirmed that the products sent to each of the nine customers were in fact counterfeit and not genuine Symantec products. The credit cards of the nine customers were billed by one of the following three entities owned and operated by Jain: MP3U.com, shopenter.com, or buysmarter.com.

9.    Symantec investigators also purchased software purporting to be genuine Symantec software from the websites greatbizdeals.com and discountbob.com. Each of these purchases also arrived in envelopes labeled "Software Purchase Department" with a return address of P.O. Box 820, Amelia, Ohio 45102-0820, containing the products the investigators had ordered. The products were inspected by a software expert assisting in the

4

investigation and confirmed to be counterfeit Symantec products.

10. Individual-1 has been identified as the registered owner of P.O. Box 820, Amelia, OH 45102-0820. Upon conducting an interview with Individual-1 investigators learned the following:

      a. In 2001, SAM Jain started a business called PMMCI which acquired and operated e-commerce websites. Jain hired Individual-1 and his company, Bytehosting Internet Services ("Bytehosting"), to host PMMCI's website, provide full system administration services, and ship and receive software CDs. Individual-1's primary contact at PMMCI was Jain.

      b. Individual-1 shipped the following software products for PMMCI: Symantec Norton AntiVirus, Symantec SystemWorks, MacAfee antivirus software, Intuit products, and Borderbound or Adobe Printshop. Individual-1 estimated that Bytehosting shipped over 50,000 software CDs for PMMCI from the end of 2001 through the beginning of 2004.

      c. Bytehosting filled orders for customers of gito.com, discountbob.com, and, Individual-1 believed, shopenter.com. Individual-1 stated that gito.com was one of the companies that PMMCI managed. Individual-1 believed that shopenter.com was another name that PMMCI used and may have possibly been the transactional Internet site for PMMCI. Individual-1 also knew that discountbob.com was one of the sellers of the software CDs that he would ship because he

recalled receiving returns from discountbob.com.

        d.    According to Individual-1, Bytehosting would usually receive compensation for its services to PMMCI on a monthly basis.   Bytehosting received approximately $9,000 per month via wire transfers from two of Jain's businesses: Shopenter.com and Shifting Currents Financial.

     11.   On March 26, 2008, SAM Jain was indicted in the Northern District of California for violating Title 18, United States Code, Sections: 2319(b)(1), 2320(a), 1343, and 1341, based on the conduct described in paragraphs 7 through 10, <u>supra</u>.   The Indictment also contained a forfeiture allegation, requiring Jain to forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2) and Title 28, United States Code, Section 2461(c), approximately $13,522,080.00 in United States currency or after acquired assets traceable thereto, in that such sum in aggregate was proceeds of the trafficking in counterfeit goods and criminal copyright offenses.

     12.   On or about July 2, 2008, a seizure warrant was issued by Magistrate Judge Debra Freeman for any and all funds on deposit in Merrill Lynch account number 437972 held in the name(s) of Financiera Volturno S.A., Claudio Ferreira Dos Santos and/or Walter Ponce De Leon, and all property traceable thereto.

### III.  THE DEFENDANT FUNDS ARE PROPERTY
### INVOLVED IN MONEY LAUNDERING

13.    Jain maintained and exercised full control over several bank accounts that he used to launder proceeds derived from selling counterfeit computer software.  Jain maintained and exercised full control over the funds deposited into Bancorp Bank account #███9280 ("Bancorp-1"), located in Delaware, held in the business name of Shopenter.com, LLC; Commercial Federal Bank account #██9065 ("Commercial Federal-1"), located in Nebraska, held in the business name of Shifting Currents Financials, Inc.; and Commercial Federal Bank account #██8217 ("Commercial Federal-2"), located in Nebraska, held in the name of shopenter.com  Bancorp-1, Commercial Federal-1, and Commercial Federal-2 were used in part to receive money paid by consumers for what they believed to be genuine Symantec software.  Commercial Federal-2 was also used to pay Individual-1 for mailing the counterfeit software to customers.

14.    After funds were received into Bancorp-1, those funds were further transferred to Bancorp Bank account #███9298 ("Bancorp-2"), held in the business name of shopenter.com, d/b/a gito.com, over which Jain also maintained and exercised full control.

15.    After funds were received into Bancorp-2, those funds were further transferred to Global Investor Services Investment account #███4968, located in Florida (the "Florida Account").

The Florida Account was in the name of a nominee business entity called Rivonal Corporation and the signatory on the account is Claudio Ferreira Dos Santos.   In truth and fact, Jain opened the Florida Account and had actual control over the Florida Account. Rivonal Corporation and Claudio Ferreira Dos Santos are nominees controlled by Jain.

16.  After funds were received into Commercial Federal-1, those funds were also further transferred to the Florida Account.

17.  After funds were received into the Florida Account, those funds were further transferred to:  Merrill Lynch account #███7731, located at 4 World Financial Center, New York, New York (the "New York Account"); Merrill Lynch Bank (Suisse) S.A. account #437972, located in Geneva, Switzerland (the "Swiss Account"); and Interactive Brokers account #██3380, located in Connecticut (the "Connecticut Account").  The New York Account, the Swiss Account, and the Connecticut Account were all established and controlled by Jain, but placed in the names of nominee business entities called Rivonal Corporation S.A. or Financiera Volturno S.A., and with a nominee owner or authorized representative named Claudio Ferreira Dos Santos.

19.  The Swiss Account, which contains the Defendant Funds, was opened under the corporate name of Financiera Volturno S.A. and the nominee signatory is Claudio Dos Santos.

19.  On October 7, 2004, the Swiss Account received a wire

transfer in the amount of $2,000,000.00 from the Florida Account.

20.  On the following dates, the Swiss Account received wire transfers from the New York Account:

        a.   On March 15, 2005, a wire transfer in the amount of $150,000.

        b.   On May 11, 2005, a wire transfer in the amount of $561,000.

        c.   On May 23, 2005, a wire transfer in the amount of $3,000,000.

        d.   On December 5, 2005, a wire transfer in the amount of $50,000.

21.  On April 18, 2008, two seizure warrants were issued in the Northern District of California for funds contained in the New York Account and the Connecticut Account.  The execution of the seizure warrants resulted in the seizure of $654,460.23.

22.  Based on the foregoing, there is probable cause to believe that the Defendant Funds represent the proceeds of the unlawful activities of criminal copyright infringement, trafficking in counterfeit goods, mail fraud, wire fraud, and domestic and international money laundering, in violation of Title 18, United States Code, Sections 2319(b)(1), 2320(a), 1341, 1343, 1956(a)(1), and 1956(a)(2), and property traceable to such property, and are therefore subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C) and 984.

### III. CLAIMS FOR FORFEITURE

23.   Incorporated herein are the allegations contained in paragraphs one through twenty-two of the Complaint.

24.   Title 18, United States Code, Section 981(a)(1)(C) subjects to forfeiture:

> Any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specific unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

25.   Title 18, United States Code, Section 1956(c)(7)(A), provides that the term "specified unlawful activity" includes "any act or activity constituting an offense listed in section 1961(1) of this title."  Included among the enumerated offenses in 18 U.S.C. § 1961(1) are:  18 U.S.C. § 2319(b)(1), which prohibits the willful infringing of the copyright of copyrighted works for the purpose of commercial and private financial gain; 18 U.S.C. § 2320(a), which prohibits the intentional trafficking in goods or services and knowingly using a counterfeit mark on or in connection with such goods or services; 18 U.S.C. § 1341, the mail fraud statute; and 18 U.S.C. § 1343, the wire fraud statute.

26.   Moreover, 18 U.S.C. § 984 provides, in relevant part, that:

> (a)(1) In any forfeiture action in rem in which the subject property is cash, monetary instruments in bearer form, funds deposited in an account in a financial institution (as defined in section 20 of this title), or precious metals –

10

(A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and

(B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.

(2) Except as provided in subsection (b), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.

(b) No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense.

27. In addition, Title 18, United States Code, Section 981(a)(1)(A) subjects to forfeiture "any property, real or personal, involved in a transaction or attempted transaction in violation of Section 1956, 1957 or 1960 of this title, or any property traceable to such property."

28. Title 18, United States Code, Section 1956(a)(1)(A) provides that

(a)(1)  Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity --

(A) with the intent to promote the carrying on of specified unlawful activity; or

11

\*     \*     \*

(B) knowing that the transaction is
designed in whole or in part --

(i) to conceal or disguise the
nature, the location, the source,
the ownership or the control of the
proceeds of specified unlawful
activity

shall be guilty of a crime.

29. Title 18, United States Code, Section 1956(a)(2)(B)(i)

provides that

(a)(2)   Whoever transports, transmits, or
transfers, or attempts to transport, transmit
or transfer a monetary instrument or funds
from a place in the United States to or
through a place outside the United States or
to a place in the United States from or
through a place outside the United States --

\*     \*     \*

(B) knowing that the monetary
instrument or funds involved in the
transportation, transmission, or
transfer represent the proceeds of
some form of unlawful activity and
knowing that such transportation,
transmission, or transfer is
designed in whole or in part --

(i) to conceal or disguise the
nature, the location, the source,
the ownership or the control of the
proceeds of specified unlawful
activity

shall be guilty of a crime.

30.   By reason of the above, the Defendant Funds became, and
are, subject to forfeiture to the United States of America,

pursuant to Title 18, United States Code, Section 1956(a)(1).

WHEREFORE, plaintiff United States of America prays that process issue to enforce the forfeiture of the defendant-in-rem currency and that all persons having an interest in the defendant-in-rem currency be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the defendant-in-rem funds to the United States of America for disposition according to law, and that this Court grant plaintiff such further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: New York, New York
       March 10, 2010

                              PREET BHARARA
                              United States Attorney for
                              the Southern District of New York
                              Attorney for the Plaintiff
                              United States of America

By:

                              JASON HERNANDEZ (JH 18598)
                              Assistant United States Attorney
                              One St. Andrew's Plaza
                              New York, New York 10007
                              Telephone: (212) 637-1024

13

<u>VERIFICATION</u>

STATE OF NEW YORK          )
COUNTY OF NEW YORK       :
SOUTHERN DISTRICT OF NEW YORK   )

      Federico E. Cortez, being duly sworn, deposes and says that he is a Special

Agent with the U.S. Immigration and Customs Enforcement for the Department of

Homeland Security assigned to the San Jose office, and as such has responsibility for

the within action; that he has read the foregoing complaint and knows the contents

thereof, and that the same is true to the best of his own knowledge, information and

belief.

      The sources of deponent's information and the ground of his belief are official
records and files of the U.S. Immigration and Customs Enforcement, the State of
California, and the United States Government, and information obtained directly by
deponent during an investigation of alleged violations of Title 18, United States Code.

                    _____
                    Federico E. Cortez
                    Special Agent
                    U.S. Immigration and Customs Enforcement
                    Department of Homeland Security

STATE OF CALIFORNIA
COUNTY OF SANTA CLARA

Sworn to before me this
28TH day of March, 2010
WITNESS MY HAND AND OFFICIAL SEAL.

_____
NOTARY PUBLIC



ON 3/8/2010 BEFORE ME, ALEXANDER RAMOS, NOTARY PUBLIC,
PERSONALLY APPEARED, FEDERICO ESTOCIO CORTEZ, WHO
PROVED TO ME ON THE BASIS OF SATISFACTORY EVIDENCE
TO BE THE PERSON WHOSE NAME IS SUBSCRIBED TO THE
WITHIN INSTRUMENT & ACKNOWLEDGED TO ME THAT HE EXECUTED
THE SAME IN HIS AUTHORIZED CAPACITY, AND THAT BY
HIS SIGNATURE ON THE INSTRUMENT THE PERSON, OR
THE ENTITY UPON BEHALF OF WHICH THE PERSON ACTED,
EXECUTED THE INSTRUMENT.

I CERTIFY UNDER PENALTY OF PERJURY UNDER
THE LAWS OF THE STATE OF CALIFORNIA THAT
THE FOREGOING PARAGRAPH IS TRUE & CORRECT.